IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEW WEST, LLP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05 C 1743 |
| | ) | |
| CITY OF JOLIET, ARTHUR SCHULTZ, | ) | HONORABLE CHARLES R. NORGLE |
| JOHN M. MEZERA, and JIM SHAPARD, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is Defendants' Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the court converts Defendants' 12(b)(6) Motion into a Motion for Judgment on the Pleadings, pursuant to Federal Rule of Civil Procedure 12©, and dismisses the Complaint.[1]

### I. BACKGROUND[2]

**A. Facts**

This case arises out of Defendant City of Joliet's attempt to condemn and rezone certain low income housing within its city limits. Built in 1965, Evergreen Terrace is a Section 8 subsidized,

---

[1] The court considered dismissal under 12(b)(1) as another option in this case. "If a plaintiff cannot establish standing to sue, relief from this court is not possible, and dismissal under 12(b)(1) is the appropriate disposition." Am. Federation of Gov. Employees, Local 2119 v. Cohen, 171 F.3d 460, 465 (7th Cir. 1999).

[2] The court takes the facts from the Complaint, and parties briefs on the Motion to Dismiss, and notes disputes within the text.

1

privately owned apartment complex in Joliet, Illinois. The complex is located in downtown Joliet, across the river from the Harrah's Riverboat casino. Evergreen Terrace sits on seven and a half acres, and can hold up to 1,000 residents. Beginning in 1982, Plaintiff New West, LLP ("New West") has owned and operated Evergreen Terrace as a Section 8 low income housing development. The Section 8 housing program is subsidized and administered by the U.S. Department of Housing and Urban Development ("HUD").

Evergreen Terrace is comprised of two separate "Phases." At the time of this Complaint, Phase I had 500 residents living in the facility. Females comprise approximately 93% of the heads of households in Evergreen Terrace, with the majority of the tenants being under 25 years of age. Additionally, 96% of the heads of households are African-American. Two-thirds of the families earn an income of less than $5,000.00 per year, with the remaining one-third earning between $5,000 to $10,000 per year. Phase II currently has 200 residents, 82% of them are African-American, and one-third of the residents earn less than $5,000.00 per year.

New West operates Evergreen Terrace pursuant to Housing Assistance Payment contracts ("HAP") with HUD. These contracts provide funds that enable Evergreen Terrace to provide low income families with housing. The HAP contracts were due to expire in 2002. However, on November 21, 2001, New West informed HUD that it intended to submit a Restructuring Plan for Phase I of Evergreen Terrace. According to New West, when Defendants learned of the plan to restructure Phase I, Defendants engaged in a campaign to force out the low-income African-American residents, through threatened litigation, and political and media pressure on New West and the residents of Evergreen Terrace.

On January 15, 2002, New West alleges that Joliet Mayer Arthur Schultz ("Schultz"), sent a

letter to HUD in which he directed HUD "not to renew the federally subsidized program at [Evergreen Terrace.]." Schultz stated that Evergreen Terrace was a blight on Joliet's near west side, and that it posed public safety issues. New West further claims that Schultz wanted to relocate Evergreen Terrace so that Joliet could demolish the housing complex and "beautify downtown Joliet."

Then, on March 4, 2003, Edward Hinsberger ("Hinsberger"), the head of Chicago's HUD office, stated that Evergreen Terrace's physical condition was acceptable, and that all health and safety concerns had been mitigated. New West claims that Hinsberger concluded that the property was in good condition. On May 16, 2003, HUD approved the Restructuring Plan for Phase I. New West also signed what it calls a "binding Restructuring Commitment" to close the transaction.

On July 16, 2003, Defendant John Mezera ("Mezera") and Jim Shapard ("Shapard") met with Hinsberger and other HUD officials. New West claims that after this meeting, the July closing date for the Restructuring Commitment was delayed. Then, in July and August 2003, New West claims that Defendants increased their efforts to intimidate Evergreen Terrace residents with false threats, including numerous inspections of Phase I. Defendants claimed these inspections revealed several violations of the Building Code. In October and November 2003, Mezera and Shultz submitted to HUD an alternative low-income resident relocation and development plan for Phase I. According to New West, this alternative plan was a sham; it was factually inaccurate, offered no realistic alternatives, and was submitted purely for political reasons. Moreover, New West claims that some of the alternative locations for Evergreen Terrace residents included addresses that Joliet previously designated as unsuitable for occupancy.

New West further alleges that as a result of the closing delays, it had to seek several temporary extensions of the HAP contract. This delay resulted in a higher debt service for New West, and increased vacancies in Evergreen Terrace. On February 8, 2005, Mezera and Shapard met with New

West to discussion the restructuring plan. According to New West, Mezera made racist comments about the African-American males at Evergreen Terrace, calling them "gangbangers." New West also claims that Mezera threatened to file a condemnation action and eminent domain proceedings in an effort to demolish Evergreen Terrace.

On August 17, 2005, the Joliet City Council held a special meeting to discuss Evergreen Terrace. At the meeting, the Mayor and the City Council passed Resolution No. 5655, "A Resolution Declaring Certain Real Property To Be a Public Nuisance and a Blighted Area and Authorizing The Initiation of Eminent Domain and Nuisance Abatement Proceedings." On August 29, 2005, Joliet notified the trustee of the land trust that holds title to Evergreen Terrace that it would apply to the Circuit Court of Will County to institute demolition proceedings against the property. Then, on September 14, 2005, HUD notified New West that it had conducted its annual inspection of Evergreen Terrace, and that the property met building code standards.

## B. Procedural History

On September 27, 2005, New West filed its First Amended Complaint, alleging violations of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 1982, 1983, state law claims for tortious interference with contract, and two claims for violation of the Supremacy Clause of the United States Constitution. Then, on November 3, 2005, Defendants filed their Motion to Dismiss. New West Responded on November 15, 2005, and Defendants Replied on December 28, 2005. Defendants' Motion to Dismiss is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Review

*1. Rule 12©*

The court reviews a motion for a judgment on the pleadings "using the standard applicable to

4

dismissals under [FRCP] 12(b)(6) for failure to state a claim on which relief can be granted." Guise v. BMW Mortg., LLC, 377 F.3d 795, 798 (7th Cir. 2004). "Rule 12© permits a party to move for judgment after the parties have filed the complaint and answer." N. Ind. Gun & Outdoors Shows, Inc. v. City of South Bend, 163 F.3d 449, 452 (7th Cir. 1998). In considering a 12© motion, the court "accept[s] the facts alleged in the complaint in the light most favorable to the . . . non-moving party." Guise, 377 F.3d at 798.

### 2. *Federal Court Jurisdiction*

The court "has an independent obligation to satisfy itself that federal subject matter jurisdiction exists before proceeding to the merits in any case." Am. Gen. Life & Accident Ins. Co., 337 F.3d 888, 892 (7th Cir. 2003). Federal courts are "always obliged to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction." Tylka v. Gerber Prods. Co., 211 F.3d 445, 447-48 (7th Cir. 2000) (quotation and internal marks omitted). "The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged." Wisconsin Knife Works v. National Metal Crafters, 781 F.2d 1280, 1282 (7th Cir. 1986). In Market Street Assocs. Ltd. Partnership v. Frey, the Seventh Circuit stated: "We remind the bench and bar of this circuit that it is their nondelegable duty to police the limits of federal jurisdiction with meticulous care . . . ." Market Street Assocs. Ltd Partnership, 941 F.2d 588, 590 (7th Cir. 1991); see also Hart v. Terminex Intern., 336 F.3d 541, 544 (7th Cir. 2003) (reiterating the admonition that litigants and courts must "meticulously review the limits of federal jurisdiction" so as to avoid the "waste of federal judicial resources and delay of justice" that occurs where a case is found to lack subject matter jurisdiction only after proceeding on the merits); see also U.S. v. Lloyd, 398 F.3d 978 (7th Cir. 2005).

## B. New West's Supremacy Clause Claim

As a preliminary matter, because the court has an "independent obligation to satisfy itself that

federal subject matter jurisdiction exists before proceeding to the merits in any case," Am. Gen. Life & Accident Ins. Co., 337 F.3d at 892, it must address whether New West has properly pled subject matter jurisdiction.

New West claims that it brings this action to "redress state action in violation of the Supremacy Clause of the United States Constitution." Am. Compl., ¶ 71. Additionally, New West alleges that the court has subject matter jurisdiction on the Supremacy Clause claims pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. Am. Compl., ¶ 93. However, it is well-established law in the Seventh Circuit that the Declaratory Judgment Act "does not and cannot serve as independent basis for federal jurisdiction." TIG Ins. Co. v. Reliable Research Co., 334 F.3d 630, 634 (7th Cir. 2003) (citing Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 818 (7th Cir. 2000)), *cert. denied* 531 U.S. 1127 (2001). Therefore, New West must establish that the "underlying claim itself satisfies jurisdictional requirements." Bunn v. Coley, 309 F.3d 1002, 1009 (7th Cir. 2002).

New West alleges "Supremacy Clause" violations as a basis for the underlying claim in its Declaratory Judgment action. Specifically, New West alleges a "conflict preemption" issue, between the Joliet state ordinance, and federal housing laws. Conflict preemption exists "if it would be impossible for a party to comply with both local and federal requirements or where local law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Hoagland v. Town of Clear Lake, Ind., 415 F.3d 693, 696 (7th Cir. 2005) (citing Freightliner Corp. v. Myrick, 514 U.S. 280, 287 (1995)).

Only "complete preemption effects federal subject matter jurisdiction." Vorhees v. Naper Auto Club, Inc., 272 F.3d 398, 403 (7th Cir. 2001). However, "'conflict' preemption . . . 'is merely a defense to the merits of a claim.'" Adkins v. Illinois Central Railroad Co., 326 F.3d 828, 835 (7th Cir. 2005) (quoting Vorhees, 272 F.3d at 403). "As such, according to the well-pleaded complaint rule, it

does not provide a basis for federal jurisdiction." Id. Here, New West alleges a conflict between the Joliet ordinance and the federal HUD laws because the eminent domain ordinance "impedes the implementation of Congressionally-mandated federal policies." Am. Compl., ¶ 74. As a result, "without the 'complete preemption' theory to support the claims against Defendants. . . there simply [is] no federal question." Adkins, 326 F.3d at 835. Therefore, New West's Supremacy Clause claims in Counts V and VII are dismissed for lack of subject matter jurisdiction.

## C. New West's Section 1982 and 1983 Claims

### 1. 42 U.S.C § 1982 (Count II)

New West next alleges that Defendants violated § 1982 by discriminating against the residents of Evergreen Terrace, when they "impaired the ability of Plaintiff to enter into contracts with HUD and the ability of the tenants of Evergreen Terrace to enter into lease agreements for low and moderate income units at Evergreen Terrace." Am. Compl., ¶¶ 59, 60.

Section 1982 provides that "all citizens of the United Stats shall have the same right . . . as enjoyed by white citizens. . . ." 42 U.S.C. § 1982. New West is not a citizen of a state, instead, it is a private corporation. As a result, New West is precluded from bringing an action under § 1982.

New West has not met the requirements in order to bring this action on behalf of the residents of Evergreen Terrace. New West is not a home-owners association who is interested in the well being of the tenants. It owns and manages Evergreen Terrace, it's main objective is to collect rent from its tenants. Furthermore, New West provides no evidence to suggest that the Evergreen Terrace residents are unable to prosecute this case themselves. New West brings this action to protect its financial interest in the federal housing subsidies. Residents of Evergreen Terrace do not receive any financial benefit if New West prevails in this case. Therefore, "it appears beyond doubt that the plaintiff can

prove no set of facts to support his claim which would entitle him to relief." Szumny, 246 F.3d at 1067. As a result, Count II of New West's Amended Complaint is dismissed.

### 2. 42 U.S.C. § 1983 (Count III, VI)

New West alleges that the public officials in Joliet acted under the color of state law while engaging in "discriminatory and improper activities," and that these acts were "designed to exclude persons of the bases of race from certain areas of the City of Joliet." Am. Compl. ¶¶ 63, 64. In order to establish liability on a Section 1983 claim, a plaintiff must show that: "(1) he suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision maker with final policy-making authority for the city." Ovadal v. City of Madison, Wisconsin, 416 F.3d 531, 535 (7th Cir. 2005) (citing Ineco v. City of Chicago, 286 F.3d 994, 998 (7th Cir. 2002)).

New West fails to establish that Joliet's "campaign" to discriminate against the African-American residents of Evergreen Terrace was an express policy or widespread practice within the city. See Davis v. Carter, 452 F.3d 686, 692 (7th Cir. 2006). In all, New West only sets forth "conclusory allegations" of discrimination, yet does not state any express policy or practice of the Joliet village board. See id. As a result, New West's § 1983 claim is dismissed.

### D. New West's Fair Housing Act Claim

### 1. FHA- 42 U.S.C. § 3601 et seq. (Count I)

New West alleges that Defendants violated 42 U.S.C. §§ 3604 and 3617, when it engaged in efforts to "cause Plaintiff to cease renting to those within protected classes because of their race, economic and familial circumstances and gender." Am. Compl., ¶ 53. Section 3604 provides that "it shall be unlawful . . . to make unavailable or deny . . . a dwelling to any person because of race, color, religion or national origin." 42 U.S.C. § 3604. This language "indicates concern with activities, such as redlining, that prevent people from acquiring property." Halprin v. The Prairie Single Family

Homes of Dearborn Park Assoc., 388 F.3d 327, 329 (7th Cir. 2005) (citing Oconomowoc Residential Programs, Inc. v. City of Milwaukee, 300 F.3d 775 (7th Cir. 2002)); see also East-Miller v. Lake County Highway Department, 421 F.3d 558, 563 (7th Cir. 2005).

However, Plaintiffs cite to no case, and the court is unable to find any on its own, that provide a limited liability partnership such as New West with standing to assert claims under the FHA on behalf of Evergreen Terrace residents. The cases cited by both Defendants and Plaintiff deal with individual tenants who sued homeowners associations, not the cities in which the housing development were located. Halprin dealt with a plaintiff homeowner in a suburban subdivision. Plaintiffs made claims under §§ 3604 and 3617 that the homeowner's association engaged in religious discrimination against the named plaintiff. See Halprin, 388 F.3d at 328. Conversely, East-Miller concerned an African-American homeowner who alleged that the Lake County Highway Department racially harassed her and her family. See East-Miller, 421 F.3d at 558.

The distinction between these cases and the present action is that New West is not an individual. It is an incorporated business entity, whose primary goal is to earn revenue. It is not an individual tenant whose rights may be infringed, or suffered some sort of discrimination.

Additionally, the court instructed New West to produce a copy of the contract between itself and HUD from October 2005. New West responded that it never entered into a contract with HUD, but that, in September 2005, it did enter into a Restructuring Commitment which was to close on October 31, 2005. Therefore, New West states that no contract currently exists between HUD and New West for financing for the Evergreen Terrace facility.[3] As a result, because there is no contract

---

[3]The court does recognize, however, that in order to bring a claim of tortious interference with contract, a plaintiff must allege and prove; (1) the existence of a valid and enforceable contract, (2) defendant's knowledge of the existing contract; (3) defendant's intentional and malicious inducement of the breach; (4) subsequent breach by a third person due to defendant's wrongful conduct; and (5) resulting damage to plaintiff. See Cody v. Harris, 409 F.3d 853, 859 (7th Cir. 2005).

currently in effect between HUD and New West, the court finds that New West does not have standing to bring its claim under the FHA.

Moreover, the court notes that no tenant is a party to this action. New West claims, with nothing more, that Joliet has discriminated against tenants in the Evergreen Terrace complex. Specifically, New West alleges that Joliet "conducted unwarranted and repeated inspections, actively interfered with the refinancing process, manufactured groundless code violations, threatened and filed frivolous lawsuits . . . ." Pl.'s Resp. to Supp. Briefing, at 5. The court rejects the unsupported claim that Joliet had a discriminatory motive in conducting these inspections, or that Joliet possessed a discriminatory intent to interfere with any prospective agreements between HUD and New West. There is not enough evidence in the record to support such a conclusion.

As a result, the court finds that New West does not have the requisite standing under §§ 3604 and 3617 to assert a claim on behalf of the Evergreen Terrace residents.

### E. Remaining State Law Claim

Because the court has dismissed New West's federal claims, it relinquishes jurisdiction on the remaining state law claim of tortious interference with contracts.

### III. CONCLUSION

For the reasons stated above, Defendants' Motion to dismiss is granted.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 9-8-06

10